UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
KIMBERLY LARSEN f/k/a KIMBERLY
KAISER, on behalf of herself and all
others similarly situated,

                        Plaintiff,

          -against-

JBC LEGAL GROUP, P.C. f/k/a JBC &
ASSOCIATES, P.C., JBC LEGAL GROUP, P.C.
f/k/a JBC ASSOCIATES, INC., JBC & ASSOCIATES,
P.C., JBC ASSOCIATES, INC., JACK
BOYAJIAN and MARV BRANDON a/k/a MARVIN
BRANDON,

                        Defendants.
------------------------------------------------------------------------X

MEMORANDUM OPINION
AND ORDER

CV 04-4409 (ETB)

Presently before the Court is plaintiff's motion for permission to move simultaneously for summary judgment and Rule 23(b)(3) class certification. If such motion is denied, plaintiff requests in the alternative that she be permitted to move for Rule 23(b)(2) class certification.

BACKGROUND

In a second amended complaint filed on August 5th, 2005, the plaintiff, Kimberley Larsen ("Larsen" or "plaintiff"), asserts claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. The plaintiff alleges that the defendants, JBC Legal Group, P.C., JBC Associates, Inc., JBC & Associates, Inc., Jack Boyajian, Marvin Brandon, and Outsource Recovery Management, Inc. (collectively, "defendants"), violated the FDCPA in their attempt to collect debts from New York consumers. (Second Amended Class Action Complaint for Violations of the Fair Debt Collection Practices Act ("Second Am. Compl.") at 4-7.) On or about October 23, 2004, defendants mailed the plaintiff a form collection letter, seeking to

1

collect the amount of $43.87.  (Id. at 5.)  The letter states in relevant part:

> **Warning**: You may be sued 30 days after the date of this notice if you do not make payment.
>
> Dear Kimberly Kaiser:
>
> This firm represents the successors in interest of the obligation you created and have not yet satisfied when you passed the bad check(s) identified below.  The check number, check date and bank account number against which the check was dishonored have been listed below.  Full amount of the check(s) and a $25.00 service charge for each check listed is now due in our office.
>
> [Line detailing store, check number, check date, check amount, bank and account number, return charge, and total due]
>
> You have thirty (30) days from receipt of this letter to pay the full amount of the check and a service charge of $20.00 per check for a total payment of $43.87. If you do not make payment, you may be sued under New York General Obligations Law Section 11-104 to recover payment.  If a judgment is rendered against you in court, it may include not only the original face amount of each check and the service charge for each check, but also statutory penalties equal to twice the face amount of each check or Four Hundred Dollars ($400.00) per check, whichever is less.
>
>     \*   \*   \*   \*   \*

(Pl.'s Second Am. Compl., Exh. A (emphasis in original).)

Based on the contents of the letter, the plaintiff's class action complaint alleges counts on behalf of two classes, "Class A" and "Class B." Class A is defined as "all consumers with New York addresses who: (a) within one year prior to the filing of this action; (b) were sent a collection letter by Defendants seeking to collect an alleged debt in a form materially identical or substantially similar to the letter sent to the Plaintiff on or about October 24, 2003, attached hereto as Exhibit A; and (c) the letter was not returned by the postal service as undelivered." (Pl.'s Second Am. Compl. ¶ 47.)  The plaintiff states that the principal questions presented with

respect to Class A are whether the defendants violated the FDCPA by: (1) failing to state the amount of the alleged debt; (2) failing to state the name of the creditor to whom the debt is owed; (3) failing to comport with violation notice requirements; (4) misrepresenting the threat of a lawsuit; (5) misrepresenting the defendants' entitlement to collect statutory damages; and (6) falsely implying that there was meaningful involvement by an attorney in reviewing the account. (Pl.'s Second Am. Compl. ¶48(B).)

Class B is defined as "all consumers with New York addresses: (a) from whom any of the Defendants sought to collect moneys for dishonored checks, (b) using a collection letter materially identical or substantially similar to the letter sent to the Plaintiff on or about October 24, 2003, attached hereto as Exhibit A, which was not returned by the postal service as undelivered, and (c) the check was more than six years old at the time Defendants' letter was sent." (Pl.'s Second Am. Compl. ¶ 84.) The plaintiff states that the principal question presented by this case with respect to Class B is whether defendants violated the FDCPA by threatening to file a time-barred suit. (Id. ¶ 85(B).)

The plaintiff seeks the following relief on behalf of both Class A and Class B: (1) actual damages; (2) statutory damages as provided by § 1692k of the FDCPA; (3) attorneys' fees, litigation expenses and costs; (4) a declaration that the defendants' form letters, represented by the form sent to the plaintiff on or about October 24, 2003, violate the FDCPA; and (5) any other relief that the Court deems appropriate and just. (Pl.'s Second Am. Compl. at 13-14 and 17.) Plaintiff argues that if plaintiff prevails on both motions, then the cost of providing notice to the

class would be shifted to the defendants, as part of the relief granted to plaintiff for winning on the merits of the summary judgment motion. At no point has plaintiff offered an estimate as to the cost of sending individual notice in this case, nor has plaintiff provided any information with respect to class-or subclass-numerosity.

On March 29, 2006, the parties appeared before me for a status conference. At the conference, Ms. Karen Wachs was admitted pro hac vice, over plaintiff's objection, to represent the individual and corporate defendants in this action. The parties were given leave to fully brief the plaintiff's pending motion, and both parties elected instead to rely on their previously-filed letter submissions, submitted by plaintiff's counsel and by the individual defendants, proceeding pro se at the time. (See Order by the undersigned, dated March 29, 2006.) Plaintiff's counsel requested permission, however, to supplement plaintiff's filing with a newly-discovered copy of a stipulation between plaintiff and defendants' former counsel, Andrew Schwartz, wherein defendants' former counsel purportedly– according to plaintiff's counsel– stipulated to plaintiff's request to move simultaneously for class certification and summary judgment. Plaintiff was granted leave to file any supplements to her motion which she has done, together with a reply to defendants' supplemental opposition.

More specifically, plaintiff's counsel Lance A. Raphael ("Raphael") has filed a supplemental declaration in further support of plaintiff's motion, and an unsigned "Stipulation to Stay Class Certification and Permit Cross Motions for Summary Judgment on Liability and Actual Damages" ("Stipulation"), which Raphael states was drafted by and orally agreed to by defendants' former counsel, Andrew Schwartz. (Declaration of Lance A. Raphael ("Raphael

4

Decl."), at 1-2.) The stipulation provides that the parties agree "to stay class certification and class discovery so that the parties may prepare and file respective Motions for Summary Judgment on the issue of liability and the measure of actual damages." (Stipulation, annexed to Raphael Decl. as Exhibit C.)

Significantly, however, plaintiff's presently pending motion does not request a stay of class certification and class discovery, but instead requests that plaintiff be permitted to move <u>simultaneously</u> for class certification and summary judgment. The procedure provided for by the terms of the stipulation and the relief sought by plaintiff's pending motion are distinctly different. As such, the purported stipulation between plaintiff and defendants' former counsel is of little import to the matter presently pending before the Court, especially since it has never been signed and filed.

DISCUSSION

I. <u>Simultaneous Motion for Class Certification and Summary Judgment</u>

In the pending motion, plaintiff primarily seeks leave to move simultaneously for class 23(b)(3) class certification and summary judgment. (Letter from Brian L. Bromberg to Judge Boyle, dated February 2, 2006 ("Pl.'s Letter Mot."), at 1.) Plaintiff argues that defendants should be forced to pay the cost of notice up front because the defendants allegedly owe several law firms significant amounts of money, and also have allegedly not paid several judgments against them. (Pl.'s Reply at 1-3.) Regardless of whether or not these allegations are true, plaintiff has provided no case law which supports her argument that she should be permitted to move jointly for class certification and summary judgment based on such allegations. Moreover, notably, plaintiff has never offered an estimate as to the cost of sending individual notices.

The individual defendants, Jack Boyajian and Marv Brandon, argue that plaintiff's motion should be denied because plaintiff is attempting to establish two classes (Classes A and B, discussed supra), and therefore, the legal and factual issues are too complex for the issues of class certification and liability to be considered jointly. (Letter from Jack Boyajian and Marv Brandon to the undersigned, dated February 9, 2006 ("Individual Def.'s Letter Brief") , at unnumbered 1-2 (citing Christensen, 815 F.2d at 206).) The individual defendants further note that if plaintiff's motion for summary judgment is heard simultaneously with the motion for class certification, "then the decision on the merits will not achieve any judicial economy that class action litigation attempts to provide." (Id. at unnumbered 3 (citing cases from the 7th, 9th, and 10th Circuits).)

The district court may consider a motion for summary judgment before a motion for class certification. In Christensen v. Kiewit-Murdock Investment Corp., the Second Circuit Court of Appeals stated that "[i]n any particular case, such procedure may or may not be appropriate depending on the complexity of the legal or factual issues raised by the motion to certify," and the "breadth of the class sought to be certified." Christensen v. Kiewit-Murdock Investment Corp., 815 F.2d 206, 214 (2d Cir. 1987). Likewise, in Schweizer v. Trans Union Corp., a FDCPA case, the Court of Appeals held that "[t]here is nothing in Rule 23 which precludes the court from examining the merits of plaintiff's claims on a proper Rule 12 motion to dismiss or Rule 56 motion for summary judgment simply because such a motion precedes resolution of the issue of class certification." Schweizer v. Trans Union Corp., 136 F.2d 233, 239 (2d Cir. 1998).

Although these cases make clear that the procedure is permissible in certain situations, it is important to note that these cases are distinguishable from the case at bar. In both cases, the lower court decided a dispositive motion filed by the defendant before ruling on the issue of class certification, and the plaintiff appealed this procedure.[1] The Court of Appeals approved of the procedure, but significantly, the posture of both cases meant that the Court of Appeals was never presented with the "cost of notice" issue that arises when a plaintiff's motion for summary judgment is granted before, or simultaneously with, a motion for class certification.[2]

---

[1] The individual defendants touch on this argument in their opposition, although they rely on cases outside of the Second Circuit. (See Individual Defs.' Letter Brief at unnumbered 2-3.)

[2] In Christensen, a securities action, defendants moved to dismiss the complaint, and thereafter, plaintiffs moved for class certification. Christensen, 815 F.2d at 208. The district court reserved decision on plaintiffs' class certification motion pending the disposition of defendants' motion to dismiss the amended complaint. Id. Subsequently, based on a tender offer which provided the proposed class with relief, the plaintiffs moved to dismiss the action as moot and requested attorneys' fees and costs. Id. at 210. The court granted plaintiffs' motion to dismiss, but denied their request for fees and costs. Id. The plaintiffs appealed the denial of fees and costs, and also appealed the court's decision to stay decision on their motion for class certification pending defendants' motion to dismiss. Id. It was in this context that the Court of Appeals held that the lower court did not abuse its discretion in reserving decision on the motion to certify pending the outcome of the motions to dismiss. Id. at 214.

Similarly, in Schweizer, the defendant moved first for summary judgment, and the plaintiff cross-moved for partial summary judgment on the issue of liability or, alternatively, for a continuance pending completion of discovery, and for a stay of the defendant's motion "pending the Court's determination with respect to certification of the putative plaintiff class.'"Schweizer, 136 F.2d at 235. The court further stated, "[a]t no time, however, did Schweizer move for class certification." Id. The lower court dismissed the case on the merits; on appeal, the plaintiff objected on the merits, and also argued that summary judgment should not have been granted before the court made a determination on the issue of class certification. Id. at 238. The Second Circuit Court of Appeals held that the decision to award summary judgment before acting on class certification was within the discretion of the district court (particularly since Schweizer never moved to certify the purposed class) (id.); however, because of the posture of the case, the Court of Appeals had no need to take into consideration how its decision would affect the cost of notice.

7

In fact, although district courts in this circuit have decided simultaneous motions for summary judgment (or judgment on the pleadings) and motions for class certification in FDCPA cases, of the cases reviewed, only one court has granted plaintiff's simultaneous dispositive motion and motion for 23(b)(3) class certification, thereby in effect shifting the cost of notice to the defendant. Compare Vega v. Credit Bureau Enterprises, No. CV 02-1550, 2005 WL 711657, at *10 (E.D.N.Y. March 29, 2005) (granting plaintiff's motion for 23(b)(3) class certification and plaintiff's motion for summary judgment) with In re Risk Mgmt Alternatives, Inc., 208 F.R.D. 493, 507 (S.D.N.Y. 2002) (granting plaintiff's motion for 23(b)(3) certification and denying plaintiff's motion for summary judgment); Goldberg v. Winston & Morrone, P.C., No. 95 Civ. 9282, 1997 WL 139526, at *7 (S.D.N.Y. March 26, 1997) (denying plaintiff's motion for class certification under Rule 23(b)(2) and plaintiff's motion for partial summary judgment).[3]

In Vega, the plaintiff moved for judgment on the pleadings and class certification pursuant to Rule 23. Vega, 2005 WL 711657 at *4. The court noted that "plaintiff 'does not dispute that this matter qualifies for certification under either branch of Rule 23,' but prefers certification pursuant to Rule 23(b)(3)." Id. (citing Plaintiff's Reply Mem. of Law in Further Supp. of Mot. for Judgment on the Pleadings and Class Certification and in Opp'n to Def.'s Mot.

---

[3]There is another case, cited by plaintiff, wherein the court granted summary judgment for plaintiff, and then, two years later, granted class certification and ordered the defendant to bear the cost of notice. Macarz v. Transworld Systems, Inc, 201 F.R.D. 54, 55-56 (D. Conn. 2001). This case, too, is distinguishable, as the defendant in Transworld agreed that it should bear the cost of notice. Id. at 59. In addition, the court did not cite to any Second Circuit cases to support its finding that where notice is to occur after liability has been determined, the defendant appropriately bears the costs. Id. (citing Hartman v. Wick, 678 F. Supp. 312, 328-29 (D.D.C. 1988); Catlett v. Missouri Highway and Transp. Comm'n, 589 F. Supp. 949, 952 (W. Do. Mo. 1984); Six Mexican Workers v. Arizona Citrus Growers, 641 F. Supp. 259, 261 (D. Ariz. 1986); Meadows v. Ford Motor Co., 62 F.R.D. 98, 101 (W.D.Ky. 1973)).

8

for Summary Judgment at 8.) Notably, the court did not discuss why plaintiff "preferred" Rule 23(b)(3) certification, but the defendant argued that the class should be certified pursuant to Rule 23(b)(2) "in order for it to avoid the 'crippling' expense of providing notice of the class action to each individual class member." Id. at 5. The court rejected the defendant's argument, finding primarily that certification under Rule 23(b)(2) is inappropriate in an FDCPA action, for the reasons discussed further, infra Part II.B. Id. However, in granting plaintiff's simultaneous motion for 23(b)(3) class certification and motion for summary judgment, and thereby shifting the cost of notice to the defendant, the Court did not address two significant Supreme Court cases, both arising from the Second Circuit. In these cases, the Court held that with few exceptions, "the plaintiff must pay for the cost of notice as part of the ordinary burden of financing his own suit," Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178, 94 S. Ct. 2140, 2153, 40 L. Ed. 2d 732 (1974), and that "ordinarily there is no warrant for shifting the cost of the representative plaintiff's performance of these tasks to the defendant." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 356, 98 S. Ct. 2380, 2392, 57 L. Ed. 2d 253 (1978).[4]

In Eisen, an antitrust and securities law case, the named plaintiff's individual stake in the damages award was only $70, and the cost to send class notices was $21,720. Eisen, 417 U.S. at 167-168. The district court, after conducting a preliminary inquiry into the merits of plaintiff's claim and concluding that plaintiff was "more than likely" to prevail on his claims, ordered the

---

[4]The plaintiff does not address these cases in its letter motion, but instead declares that "[a]ny rationale against deciding the merits of a case before or simultaneously with deciding class certification comes from the 'one-way intervention doctrine,'" and spends the bulk of her brief arguing that the "one-way intervention doctrine has been eroded. (Pl.'s Letter Brief at 2.) Because the Court finds that the more relevant focus for the purposes of the present motion is the propriety of plaintiff's attempt to shift the cost of notice to the defendants, the Court declines to address plaintiff's discussion of the one-way intervention doctrine.

defendant to pay 90% of the notice costs. Id. at 177. The Second Circuit Court of Appeals reversed, and the United States Supreme Court agreed:

> [i]n the absence of any support under Rule 23, petitioner's effort to impose the cost of notice on respondents must fail. The usual rule is that a plaintiff must initially bear the cost of notice to the class. The exceptions cited by the District Court related to situations where a fiduciary duty pre-existed between the plaintiff and defendant, as in a shareholder derivative suit. Where, as here, the relationship between the parties is truly adversary, the plaintiff must pay for the cost of notice as a part of the ordinary burden of financing his own suit.

Eisen, 417 U.S. at 178-79. In Sanders, also a securities case, the cost of sending individual notices was estimated at over $16,000. Sanders, 437 U.S. at 340. The district court ordered the defendants to help compile a list of the names and addresses of the members of the plaintiff class, id. at 342, and the Second Circuit Court of Appeals affirmed. Id. at 347. The Supreme Court reversed, holding that Rule 23(d) governs notice requirements, and reaffirming its holding in Eisen that the "general rule must be that the representative plaintiff should perform the tasks [necessary to send the class notice], for it is he who seeks to maintain the suit as a class action and to represent other members of his class." Id. at 356. The court recognized that in some instances, the defendant may be able to perform a necessary task with less difficulty or expense than could the representative plaintiff, and the court may order the defendant to perform the task. Id. Still,

> [i]n this situation, the district court must exercise its discretion in deciding whether to leave the cost of complying with its order where it falls, on the defendant, or place it on the party that benefits, the representative plaintiff. . . Although we do not attempt to catalogue the instances in which a district court might be justified in placing the expense on a defendant, we caution that the courts must not stray too

> far from the principle underlying Eisen IV that the representative
> plaintiff should bear all costs relating to the sending of notice because
> it is he who seeks to maintain the suit as a class action.

Id. at 358-59.

Both Eisen and Sanders remain the leading cases on the issue of which party should bear the financial burden of giving notice, and one leading treatise has gone so far as to state that after Eisen, "it is now clear that all notice costs must be borne by the plaintiffs." 7AA Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1788 (2005). The plaintiff has provided the Court with inadequate information as to numerosity and costs and sets forth no additional facts that would justify departure from the general rule in this action.

Based on the foregoing, plaintiff's motion for leave to move simultaneously for summary judgment and Rule 23(b)(3) class certification, for purposes of shifting the cost of notice to the defendants, is denied.

II.  Class Certification Under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3)

Plaintiff's primary request is for leave to move simultaneously for 23(b)(3) class certification and summary judgment. Plaintiff seeks, in the alternative, leave to move for class certification pursuant to Rule 23(b)(2). The distinctions between Rule 23(b)(2) and Rule 23(b)(3) classes and the merits of plaintiff's alternative position are discussed below.

A.  Class Certification Under Rule 23(b)(3)

A plaintiff seeking class certification must satisfy two requirements, and the plaintiff bears the burden of showing that the requirements have been met. Caridad v. Metro-North

Commuter R.R., 191 F.3d 283, 291 (2d Cir. 1999). First, the plaintiff must demonstrate that the proposed class meets the four requirements of Federal Rule of Procedure 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. Rule 23(a), Fed. R. Civ. P. Once it is determined that the potential class satisfies the requirements of Rule 23(a), the plaintiff must demonstrate that the class belongs to one of the three categories set forth in Rule 23(b): 23(b)(1), 23(b)(2) or 23(b)(3). The Rule 23(a) requirements are not presently an issue; rather, for purposes of the present motion, it is more important to note that plaintiff seeks class certification under Rule 23(b)(3), but only if the Court permits plaintiff to move simultaneously for class certification and summary judgment. (Pl.'s Letter Brief at 1, 3.) If the Court denies the present motion, the plaintiff requests leave to move for class certification under Rule 23(b)(2). Id. at 3.

The most important distinction between a 23(b)(2) and a 23(b)(3) class for purposes of this motion is that members of a Rule 23(b)(3) class, unlike members of a Rule 23(b)(2) class, are entitled to individual notice and an opportunity to opt out. Rule 23(b), Fed. R. Civ. P.; Manual for Complex Litigation § 21.221 (4th ed. 2004). Rule 23(b)(2) does not require notice or permit class members the opportunity to opt-out. Fed. R. Civ. P. 23(c)(2)(A). Where, as here, money damages are the primary relief requested, courts typically certify the class under Rule 23(b)(3), after ensuring that due process requirements have been met. Id. While the precise merits of class certification in this action have not been thoroughly briefed and are not presently at issue, it bears mentioning that courts routinely certify plaintiffs' classes under Rule 23(b)(3) in FDCPA cases, and it is unlikely that plaintiff here would have trouble demonstrating that her

proposed class meets the requirements of Rule 23(b)(3).[5]

   B.   Class Certification Under Rule 23(b)(2)

The plaintiff argues that if the Court does not permit plaintiff to move simultaneously for Rule 23(b)(3) class certification and summary judgment, then the plaintiff should be permitted to move for class certification under Rule 23(b)(2). Plaintiff states: "[b]ecause class actions seeking declaratory relief under Rule 23(b)(2) are not subject to the individual notice requirements of Rule 23(c)(2), [p]laintiff is not prohibited from moving simultaneously for class certification and summary judgment. Various FDCPA cases have been certified under Rule 23(b)(2)." (Pl.'s Letter Brief at 4.) A class is typically certified under Rule 23(b)(2) when "class-wide injunctive or declaratory relief is necessary to redress group injuries, such as infringements on civil rights, and is commonly relied on by litigants seeking institutional reform through injunctive relief." Manual for Complex Litigation § 21.142 (4th ed. 2004). Rule 23(b)(2) certification presumes that the class is cohesive, a presumption which can be destroyed by showing individualized issues as to liability or remedy. Id.

Significantly, none of the three cases cited by the plaintiff as an example of a case where a court has certified a Rule 23(b)(2) class in an FDCPA action is from the Second Circuit. (Pl.'s

---

[5] A class should be certified under category 23(b)(3) when: (1) the court finds a common question of law or fact common to all of the members that predominate over any questions affecting individual members; and (2) a class action is superior to other available methods for the fair and efficient adjudication of the matter. Rule 23(b)(3), Fed. R. Civ. P. In making this determination, the court should consider: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of the litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Id. See also Vega v. Credit Bureau Enterprises, No. CV 02-1550, 2005 WL 711657, at *4 (E.D.N.Y. March 29, 2005).

Letter Brief at 4 (citing Swanson v. Mid. Am, Inc., 186 F.R.D. 665 (M.D. Fla. 1999); Borcherding-Dittloff v. Transworld Systems, Inc., 185 F.R.D. 558, 565-66 (W.D. Wis. 1999); Gammon v. GC Services Ltd. Partnership, 162 F.R.D. 313, 319-322 (N.D. Ill. 1995)).) Moreover, the cases cited by the plaintiff are distinguishable from the case at bar.

For example, in Swanson, a FDCPA action, the plaintiff initially moved for class certification pursuant to 23(b)(3) and 23(b)(2). Swanson v. Mid Am, Inc., 186 F.R.D. 665, 668 (M.D. Fla. 1999). However, the court noted that the defendant was unable to identify the names and addresses of specific class members. Id. For this reason, and because 23(b)(3) requires notice to individual class members, the court held that certification under Rule 23(b)(3) would be inappropriate. Id. ("Thus, certification under Rule 23(b)(3) would be inappropriate, as 23(b)(3) requires notice to individual class members."). Ultimately, after finding that the monetary damages did not predominate over declaratory relief, the court certified the class under 23(b)(2). Id. at 669. Here, although plaintiff relies on Swanson, the plaintiff has made no showing that 23(b)(2) certification is appropriate here for the reasons set forth in Swanson, i.e., that the defendant is unable to identify the names and addresses of specific class members for 23(b)(3) notice purposes.

The other two cases cited by plaintiff, Borcherding-Dittloff and Gammon, are also distinguishable. In both of these FDCPA actions, the courts addressed the requirement that, to certify a class pursuant to 23(b)(2) (rather than 23(b)(3)), the plaintiff must primarily be seeking either injunctive or declaratory relief. See Rule 23(b)(2), Fed. R. Civ. P. Both courts noted that injunctive relief is not available to private litigants under the FDCPA, and that where declaratory relief and monetary relief are both requested, the declaratory relief must predominate over

monetary relief. Borcherding-Dittloff, 185 F.R.D. at 566; Gammon, 162 F.R.D. at 320-21. While many courts have found that this requirement renders 23(b)(2) class certification inappropriate in FDCPA cases (see the discussion of cases from the Second Circuit, infra), the Transworld and Gammon courts held that declaratory relief predominated over monetary relief because the proposed class size was so large and the monetary award (capped at $500,000)[6] to each class member de minimus.[7] Borcherding-Dittloff, 185 F.R.D. at 565-66; Gammon, 162 F.R.D. at 313, 321. Both courts held that because declaratory relief predominated over the request for monetary relief, 23(b)(2) class certification was appropriate. Borcherding-Dittloff, 185 F.R.D. at 565-66; Gammon, 162 F.R.D. at 322.

Significantly, here, although plaintiff seeks permission to move for 23(b)(2) certification, plaintiff has made no claims about the potential size of the class or amount of damages involved, the two factors central to the decisions to certify classes under Rule 23(b)(2) in Gammon and Transworld. More importantly though, even if the proposed class here is so large as to render the award of any monetary damages de minimus, district courts in the Second Circuit have rejected the rationale employed by Transworld and Gammon to certify 23(b)(2) classes in FDCPA cases. See, e.g., Sparkman v. Zwicker & Assocs., P.C., 374 F. Supp. 293, 298 n.2 (E.D.N.Y. 2005). In Sparkman, a FDCPA action, the defendant moved the court for judgment

---

[6]In a class action under the FDCPA, class damages are capped at $500,000 or 1% of the net worth of the defendant, whichever is less. 15 U.S.C. § 1692k(a)(2)(B).

[7]For example, in Borcherding-Dittloff, the court found that the proposed class likely included more than 50,000 people, meaning each member would be entitled to less than ten dollars. Borcherding-Dittloff, 185 F.R.D. at 566. In Gammon, upon which the Borcherding-Dittloff court relied heavily, the court found that the proposed class was so large that if the maximum damages were to be awarded, each class member would receive approximately 13 cents. Gammon, 162 F.R.D. at 321.

on the pleadings or, in the alternative, for summary judgment. Id. at 297. The court, in discussing the type of relief available in a FDCPA action, stated, "[t]he FDCPA contains no express provision for injunctive or declaratory relief in private actions, although it does authorize such relief in enforcement actions brought by the Federal Trade Commission." Id. (comparing 15 U.S.C. § 1692k with 15 U.S.C. § 16921). Judge Gershon specifically stated that, although in some district court cases, including Gammon, courts have distinguished between injunctive relief and declaratory relief and have held that declaratory relief is available to private litigations under the FDCPA, "I am not persuaded by these cases that such a distinction is embodied in the statute." Id. at n.2.

Further, although the Second Circuit Court of Appeals has not yet addressed this issue, other district courts in this circuit (as well as the Third, Seventh, and Eleventh Courts of Appeals), have held that certification under Rule 23(b)(2) is not appropriate in FDCPA cases. See id. at 298 (citing cases). See also, e.g., Vega v. Credit Bureau Enterprises, No. CV 02-1550, 2005 WL 711657, at *5 (E.D.N.Y. March 29, 2005)(noting that certification under 23(b)(2) is inappropriate in a FDCPA case because "although plaintiff additionally seeks declaratory and injunctive relief, plaintiff's eligibility for statutory damages comes directly from the FDCPA and not merely from a declaration that the [defendant's] letter violated the FDCPA"); Petrolito v. Arrow Financial Services, LLC, 221 F.R.D. 303, 312 (D. Conn. 2004) (denying plaintiff's motion for class certification under Rule 23(b)(2), and noting that practically speaking, FDCPA cases do not primarily concern declaratory or injunctive relief, because "even if the court were to issue a declaratory ruling that [the defendant] violated the FDCPA by its debt collection practices, that declaration would not have the practical effect of an injunction, or correspond to

16

injunctive relief."); Goldberg v. Winston & Morrone, P.C., No. 95 Civ. 9282, 1997 WL 139526, at *4 (S.D.N.Y. March 26, 1997) (denying plaintiff's motion for class certification under Rule 23(b)(2), stating that "[i]t has long been the rule in this Circuit that 'Subsection (b)(2) was never intended to cover cases such as this where the primary claim is for damages, but is only applicable when the relief sought is exclusively or predominantly injunctive or declaratory.'") (quoting Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 564 (2d Cir. 1968)). Not surprisingly, the plaintiff has not cited any cases where a court in the Second Circuit has granted 23(b)(2) class certification in an FDCPA case, and the Court's own search has not revealed any.

The plaintiff may proceed to move for class certification under Rule 23 with the knowledge based on the foregoing that it is very unlikely plaintiff could prevail on a motion to certify the proposed class under Rule 23(b)(2).

## CONCLUSION

For the foregoing reasons, plaintiff's motion to move simultaneously for summary judgment and Rule 23(b)(2) class certification is denied.

SO ORDERED.

Dated: Central Islip, New York
April 17, 2006

/s/ E. Thomas Boyle
E. THOMAS BOYLE
United States Magistrate Judge